UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD COATS,<br><br>*Plaintiff*,<br><br>v.<br><br>ELISABETH DEVOS, Secretary, U.S. Department of Education,<br><br>*Defendant*. | Civil Action No. 13-2001 (RDM) |

## **FINAL PRETRIAL ORDER**

Based on the discussion at the Pretrial Conference held on October 6, 2017, the following provisions shall govern the trial in this action that is scheduled to begin on October 16, 2017. This Final Pretrial Order is entered, pursuant to Local Civil Rule 16.5(a)(3), to ensure that the trial proceeds efficiently, fairly, and with civility.

**I.     Trial Schedule**

1.     Unless the parties are otherwise notified, the Court will convene the jury portion of the trial from 9:30 a.m. to 4:30 p.m. each trial day, with a brief mid-morning and mid-afternoon recess.

2.     Opening statements shall not exceed 30 minutes per side. Any exhibits, charts, or summaries to be used in opening statements must be cleared with counsel for the opposing side. Any objections must be presented to the Court for resolution at 8:30 a.m. on October 16, 2017.

3.     Immediately after opening statements, the plaintiff should be prepared to call his first witness.

4. Unless otherwise instructed by the Court, counsel should be present in the courtroom each morning promptly by 9:00 a.m. to address any preliminary matters. The parties shall appear at 8:30 a.m. on the first day of trial. Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting. Counsel must be in the courtroom seated at their representative counsel tables at least five minutes before court is scheduled to resume after a recess.

## II. General Courtroom Rules

1. The Court expects counsel to exercise civility at all times.

2. Unless leave is otherwise granted, counsel shall:

   a. Examine witnesses from the lectern;

   b. Request permission before approaching a testifying witness;

   c. Stand when raising objections;

   d. Remain seated when the jury is entering or leaving the courtroom;

   e. Remain in the courtroom once Court is in session;

   f. Direct all statements for the record to the Court rather than to the opposing party; and

   g. Refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname.

## III. Jury Selection Process

1. Rule 48 of the Federal Rules of Civil Procedure requires that a unanimous verdict be returned by a jury of at least six members and that the jury begin with no more than twelve members. *See* Fed. R. Civ. P. 48. To provide for the sickness or disability of any juror, a jury of eight will be selected. Consistent with the Federal Rules of Civil Procedure, no alternates will be

selected.  *See* Fed. R. Civ. P. 48(a); *see also* Fed. R. Civ. P. 47, Advisory Comm. Note, 1991 Amdt.

      2.      The number of panelists is computed by totaling the following: the number of jurors to be selected (eight) and the number of preemptory challenges (three per party, or six total).  Fed. R. Civ. P. 47(b); 28 U.S.C. § 1870.  To provide a cushion, the Court will question a sufficient number of prospective jurors to qualify a venire panel of sixteen prospective jurors, after excusing panelists for cause.

      3.      The prospective jurors will be seated in the courtroom by the courtroom deputy clerk in the order in which their names appear on the venire list.  The seating arrangement will start with the first prospective juror being placed in the first row of seats located on the right side of the courtroom as viewed from the bench looking toward the rear of the courtroom.  Subsequent prospective jurors will be seated in the order listed on the venire list in sequential order until all the seats are occupied.  Prospective jurors will be seated in sequential order in consecutive rows on the left side of the courtroom until all the prospective jurors are seated.

      4.      When the prospective jurors are seated, the courtroom deputy clerk will administer the oath, after which the Court will make a brief statement about the importance of jury service and the selection process, including the purpose of the note card and pencils provided each prospective juror by the deputy clerk.

      5.      The Court decides what *voir dire* questions will be asked, after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement.  The Court will ask the prospective jurors *voir dire* questions collectively.  Prospective jurors will be instructed to mark on the note card provided by the courtroom deputy the number of any question to which the prospective juror has an affirmative answer.  After the collective *voir dire*

questions have been asked, prospective jurors will be called up to the bench individually for any follow-up questions while a white noise machine is activated to protect the juror's privacy. Each prospective juror will be asked follow-up questions by the Court about any affirmative response indicated on their card. Counsel will have the opportunity to request that the Court ask additional pertinent follow-up questions of prospective jurors at this time or to pose follow-up questions directly to prospective jurors. Fed. R. Civ. P. 47(a). Strikes for cause will be considered immediately after the questioning of each prospective juror. The Court will not, however, dismiss any prospective juror until after the jury selection process is completed.

6. Each side will have three preemptory challenges. *See* Fed. R. Civ. P. 47(b); 28 U.S.C. § 1870. The courtroom deputy clerk will provide counsel with a document listing all sixteen qualified prospective jurors, which counsel may use to record their preemptory strikes. As discussed at the Pretrial Conference, counsel will then simultaneously exercise their preemptory strikes.

7. Prospective jurors who are stricken on a preemptory challenge will not be excused from the courtroom until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). In the event a *Batson* challenge is raised and found to be meritorious, one remedy may be to impanel the improperly stricken juror on the jury and to preclude the party who improperly exercised the strike from excluding that juror. *Batson* violations may also be remedied by the imposition of monetary sanctions. Counsel should therefore be mindful of their obligation not to exercise preemptory challenges that seek to exclude jurors on the basis of race or gender.

**IV.     Technical Equipment**

Counsel needing technical assistance with courtroom equipment (*e.g.* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

**V.      Statement of the Case**

> This case involves Plaintiff Ronald Coats's claims of race discrimination and retaliation under the Title VII of the Civil Rights Act of 1964 in connection with the termination of his employment with the United States Department of Education. Mr. Coats contends that Defendant fired him from his job as a Systems Accountant because of his race, and in retaliation for having previously raised allegations of race discrimination in his employment. Defendant denies that Mr. Coats was terminated for either of these reasons, and contends that he was removed from his position because of poor performance.

**VI.     Voir Dire Questions**

The questions which the Court intends to pose collectively to prospective jurors are set forth in Attachment A to the Order.

**VII.    Objections During Trial**

Counsel must state clearly and succinctly the legal basis for any objection. To protect the record for appellate review, counsel must explain or amplify any objection on the record outside the hearing of the jury, either at the bench or after the jury has been excused. If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may seek a bench conference.

**VIII.   Jury Instructions**

If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the Court will consider the request waived.

**IX. Witnesses**

    1.    A party calling a witness must arrange for the witness's presence until cross-examination is completed. Failure to have a witness present for cross-examination is grounds for striking the witness's testimony. Except in extraordinary circumstances, the Court will not recess the trial simply because a witness is unavailable.

    2.    The Court will endeavor to accommodate out-of-town and expert witnesses if counsel alerts the Court in advance.

    3.    Counsel are advised to avoid eliciting a witness's personal identifiers, such as social security numbers, financial account information, names of minor children, dates of birth and home addresses. If such information inadvertently becomes part of the record, counsel may request redaction from the public transcript of such information.

**X. Exhibits**

Counsel planning to tender exhibits must provide a copy of the exhibits to the courtroom deputy clerk. Exhibits should be pre-marked in a manner that distinguishes between joint exhibits, plaintiff's exhibits, and defendant's exhibits.

**XI. Final Arguments**

    1.    Any charts, summaries, or other demonstrative exhibits counsel intends to use in closing arguments must be cleared with opposing counsel 24 hours before closing arguments. Any objections must be presented to the Court for resolution by 8:30 a.m. the morning of closing arguments.

    2.    With regard to both opening and closing arguments, counsel should avoid making statements or arguments that will engender objections. The Court will intervene *sua sponte*,

without waiting for objection, if counsel fails to adhere to the basic legal principles and standards of civility. Failure to abide by these rules may result in sanctions.

## XII. Final Instructions

The courtroom will be locked during jury instructions and no one will be permitted to enter or leave.

## XIII. Defendant's Motions *in Limine*

For the reasons explained at the Pretrial Conference held on October 6, 2017, Defendant's Motions *in Limine* are resolved as follows:

1. Defendant's motion to exclude evidence regarding Mr. Jeungst's treatment of Comparators A and B is hereby **DENIED** with leave to renew at trial. The Court will also permit Abigail Cornish to testify at trial, subject to Plaintiff's right to raise any objections at that time.

2. Defendant's motion related to the use of videotapes of Mr. Juengst and Mr. Canellos Depositions is **WITHDRAWN**.

3. Defendant's motion to exclude the testimony of Leonard Haynes is **WITHDRAWN**.

4. Defendant's motion to exclude the testimony of attorney Eric Young is **WITHDRAWN** because Plaintiff has agreed to withdraw Mr. Young as a witness.

5. Defendant's motion to exclude the testimony of Mr. Coats's former co-workers' opinion of Mr. Coats's performance is hereby **DENIED** with leave to renew at trial.

      6.      Defendant's motion to exclude the testimony of Kathy Ballard is hereby **DENIED** with leave to renew at trial.

      **SO ORDERED.**

        /s/ Randolph D. Moss
        RANDOLPH D. MOSS
        United States District Judge

Date:  October 15, 2017

## ATTACHMENT A TO ORDER

## VOIR DIRE QUESTIONS

### Knowledge of Participants in the Case

1. As I said, I am Judge Moss and I will be the presiding judge in this case. Assisting me are Kristin Thompson, the Deputy Clerk whom you have met, and my law clerks, Kelsey Chapple, Alex Miller, and Rebecca Lee. The court reporter today is Jeff Hooks. Do you know any of these people?

2. Mr. Coats is represented by Richard Salzman of the law firm Heller, Huron, Chertkof & Salzman. Do you know Mr. Coats or Mr. Salzman? Have you had anything to do with Mr. Salzman's law firm? As I said before, the defendant is Elisabeth DeVos, the United States Secretary of Education, who is sued in her official capacity only. Do you know, or have you heard of, Elisabeth DeVos? Do you have any pre-existing opinions, favorable or unfavorable, about Secretary DeVos that might impact your ability to decide this case fairly or impartially? Secretary DeVos will be represented three attorneys: Jeremy Simon, Brian Field, and Michael Taylor. Do any of you know Mr. Simon, Mr. Field, or Mr. Taylor?

3. I am now going to have each side indicate the witnesses that they may be calling. I have asked them to include all possible witnesses, although they may not all be called to testify. And the question is going to be, as to each of these witnesses, do you know the witness? Mr. Salzman will now read the names of witnesses that you may hear from and of people that you may hear about during the trial. Mr. Simon will now read a list of names of witnesses that you may hear from or about during trial. Do you know any of the people just announced?

**Familiarity with Litigation in General or Jury Service**

4. Have you, any member of your family, or a close friend ever been a lawyer? Do you work for or with lawyers in any capacity? Have you ever studied law?

5. Have you ever served as a juror in a criminal or civil case or as a member of a grand jury in either a federal, state, or District of Columbia court?

6. Have you, or any of your family or close friends or household members, ever been involved in a court case, as a plaintiff, defendant, or witness?

7. Do you have any strong opinions about the court system or the judicial process that would prevent you from being fair to either party in this case?

**Nature of the Claims**

8. A few moments ago, you heard a brief summary about the claim in this case—that is, Mr. Coats claims that the Department of Education, his employer at the time, fired him because of his race and in retaliation for having previously raised allegations of racial discrimination. Is there anything about the nature of those claims, or any experience that you or a family member or close friend may have had, that would affect your ability to be a fair and impartial juror in this case?

9. Have you, any member of your family, or a close friend, ever worked for the Department of Education?

10. In your current or previous jobs, are you or were you a manager or supervisor? Have you ever held a supervisory position, or have you ever owned your own business?

11. Have you, any member of your family, or a close friend ever worked in a human resources position?

12. Have you, any member of your family, or a close friend ever worked as an accountant or auditor?

13. Have you or a close family member ever worked for the federal government?

14. Have you, any member of your family, or a close friend ever been involved in any capacity in an employment dispute, that is, a dispute between an employee and his or her employer?

15. Have you, any member of your family, or a close friend ever filed a charge of discrimination or retaliation with the Equal Employment Opportunity Commission or your employer's EEO office?

16. Have you, any member of your family, or a close friend been accused of discriminating or retaliating against another person or been named in a discrimination or retaliation claim, charge or lawsuit?

17. Have you, any member of your family, or a close friend ever sued the United States government or made a claim for money against the United States government?

18. Do you have a strongly held positive or negative attitude toward the operations of the Federal Government, the operations of any of its agencies, or the abilities of government employees or officials?

19. Do you think you would tend to believe the word of an employer or supervisor over that of an employee?  On the other hand, would you tend to believe the word of an employee over an employer or supervisor?

20. Have you, any member of your family, or a close friend been unfairly denied a promotion at work or treated unfairly by a supervisor or manager?

21. Have you ever felt that you were discriminated against based on your race?

22. Have you ever raised concerns to a supervisor, manager, or co-worker about race discrimination at your workplace?

23. Have you ever felt that your supervisor or manager retaliated against you on the job for speaking out or complaining about something he or she was doing?

24. Do you believe that discrimination laws are unfair to employers?

25. Would you have any difficulty awarding money damages against the Defendant if you believed that the evidence supported such an award?

26. Would you have any difficulty deciding not to award money damages to Plaintiff if you believe that the evidence did not support such an award?

27. Have you ever advocated for laws that place limits on the amount of money that a person who proves some sort of damage in court can recover?

28. Do you—because of any of your religious, philosophical, or political beliefs—feel that you would tend to lean toward or against one of the parties or be unable to decide this case fairly and impartially?

### **Individual Judgment**

29. To reach a verdict, every juror must agree on the verdict. That is, any verdict must be unanimous. In deliberations you must consider the opinions and points of view of your fellow jurors. In the final analysis, however, you each must follow your own conscience and be personally satisfied with the verdict. Would any of you have difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

30. If you are selected to sit on this case, you must be able to render a verdict solely on the evidence presented at the trial and the law as I will give it to you in my instructions,

disregarding any other ideas, notions, or beliefs about the law that you may have encountered.  Is there anything that will prevent you from doing so?

31. Please look around at your fellow jury panel members.  Do you know any other member of the jury panel, or any other person in the courtroom, for example from work, school, socially, prior jury service, or your neighborhood?

### **Medical Problem/Hardship/Catch-all**

32. Do you have a hearing difficulty or vision impairment or any other physical problem that might interfere with your ability to hear the testimony of the witnesses or review the exhibits in this case?

33. Are you now taking or do you anticipate taking medication of any kind during the course of the trial this week that might cause drowsiness, or are you experiencing any other physical or mental conditions which might in any way affect your ability to give your full attention to this case?

34. The presentation of evidence in this case is expected to last up to a full week; the length of deliberations is determined by the jury itself.  Would you find it a severe hardship to serve as a juror in this case and to give your full time and attention to it?  We are all busy—at work and at home.  What I am asking is whether you have some pressing emergency or unusually urgent obligation coming up during this time.

35. Since receiving your summons to jury duty, have you moved to a different address?

36. Do you know any other reason, not already discussed, that might interfere with your ability to arrive at a fair and impartial verdict, or which causes you to feel you cannot sit as a juror in this case?